Luis Calderón, etc., Plaintiff and Appellee, *v.* Manuel Cacho Vega, Defendant and Appellant.

No. 8639.   Argued June 10, 1943.—Decided November 24, 1943.

594

*Rafael Padró Parés* for appellant.   *Angel Rivera Colón* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The conduct of the attorneys for the plaintiff in the prosecution of this case is exceedingly strange and in order to do complete justice herein we must state it in this opinion.

The original complaint was filed on October 24, 1938, and was directed against Manuel Cacho Vega, as sole defendant, praying for a judgment against him for the sum of $5,000. On the 5th of the following December the plaintiff, through his attorney, filed a motion, alleging that after the injury received by the plaintiff had been examined and after conferring with the physician who treated him, his attorney, acting with the express authorization of the mother of said minor, had reached the conclusion that the amount claimed ($5,000) was entirely exaggerated and out of proportion to the slight damage which the injured party had sustained, that on said date the plaintiff had filed a complaint against the same defendant in the Municipal Court of Ciales, based on the same cause of action, praying for the recovery of $150 as damages and $50 as attorney's fees. They exhibited a copy of the complaint filed in the Municipal Court of Ciales and prayed that the lower court consider the action brought on October 24, 1938, as abandoned by the plaintiff, in order that the latter might proceed with the suit in the Municipal Court of Ciales.

The lower court in its decision denying the said motion of the plaintiff, among other things, said:

"Taking into account the allegation of the original complaint and of the motion to litigate *in forma pauperis* and even of the very complaint filed in the municipal court, this court thinks that there is no reason to dismiss this case in the District Court of Arecibo in order to take it to an inferior court, when it appears, as stated under oath in the motion to litigate *in forma pauperis,* that there was a severe fracture of the forehead and of the region above the right eye of the minor, that the health of said minor is seriously impaired, and that he is suffering from severe headaches.

"The complaint having already been filed in the district court, any exaggeration or error in the amount claimed, does not matter, for the judge may discretionally award any sum that may be just after hearing the physician and examining the minor. It can not be understood why a new complaint should be filed in another court when the action has already been brought in this district court.

"Moreover, it also appears from the record that the minor's mother who has the *patria potestas* is illiterate and it must be assumed that she is likewise unable to realize the condition of the minor and the consequences which might flow from his having been kicked by a horse on the forehead.

"Therefore, and until the court has had an opportunity to hear the testimony of the physician and to examine the minor, the motion for a voluntary dismissal of the complaint filed by the plaintiff in this case is denied.

"In the event that the mother of the minor should fail to prosecute this case diligently, the court will appoint a guardian *ad litem* in order that he may continue the same and defend the interests of said minor."

It further appears from the record that on January 28, 1939, the attorneys for the plaintiff amended the original complaint, which they had filed in the lower court, by joining as a party defendant, with the original defendant Manuel Cacho Vega, his son Ignacio Cacho Parés. In said amended complaint judgment for $5,000 was prayed against the two defendants. The defendant Manuel Cacho Vega filed a demurrer to the complaint of February 3, 1939, and it does not appear from the record whether or not said de-

murrer was disposed of. On March 20, 1939, the same attorneys for the plaintiff filed a new motion in which they stated:

"1. That originally a complaint was filed in the present case against the defendant Manuel Cacho Vega, because at first they believed in good faith that said defendant Manuel Cacho Vega was liable for the damages involved in the present cause. of action, he being the owner of the property where the accident·occurred.

"2. That subsequently, and after an investigation of the matter, it was learned that the property had been leased to the other defendant Ignacio Cacho Parés for some years prior to the accident, and that the latter was the owner of the horse which caused the accident in question, said defendant Ignacio Cacho Parés being the only one liable in damages, for which reason, in view of these facts, an amended complaint was filed joining Ignacio Cacho Parés as a party defendant; that said contract of lease was executed before a notary public by Mr. Manuel Cacho Vega, as owner of the property, and by Ignacio Cacho Parés as lessee.

"3. That after the amended complaint had been filed, a demurrer was filed by defendant Manuel Cacho Vega, alleging that in so far as he was concerned, the amended complaint did not state facts sufficient to constitute a cause of action, and the plaintiff acknowledges and admits that in truth, after an investigation had been made and according to the very evidence of this party, really no liability whatever attaches to said defendant Manuel Cacho Vega in this case, the person liable being the other defendant Ignacio Cacho Parés in his twofold capacity as lessee and owner of the horse which caused the accident for which the cause of action was brought.

"4. And the plaintiff now alleges that defendant Ignacio Cacho Parés has voluntarily offered to him, after various conferences held for that purpose, by way of compromise of this suit, the sum of two hundred dollars ($200) to compensate the alleged damages sustained by the minor Luis Calderón, and that the plaintiff herein considers said sum to be a just and reasonable compensation for the damages sustained, since the injuries received by the said minor are not as serious or important as was stated in the original complaint filed in this case.

"5. That in the opinion of the plaintiff herein it is to the advantage of the minor Luis Calderón that the sum of two hundred dollars ($200) be accepted as a compromise of this action, since

the injuries received by said minor are not serious, and the plaintiff herein, in view of the uncertainty to which suits are subject, takes the risk of the case herein being decided adversely to the plaintiff; moreover, the mother of said minor is a wholly insolvent person and unable to defray the expenses necessary to bring the witnesses before this Honorable Court, and the other expenses, including attorney's fees.

"6. That although defendant Ignacio Cacho Parés does not sign the present motion, for which reason this Honorable Court could not render judgment against him, the plaintiff is willing to file with this Honorable Court in due time, the consent of said defendant that judgment be entered against said defendant for the sum of $200 not including disbursements or attorney's fees, since the said expenses are included in the aforesaid sum of $200.

"WHEREFORE, the plaintiff prays that, after a hearing for the purpose of determining the convenience for plaintiff to accept said sum of $200 in full settlement of the damages sustained, and after receiving oral and expert evidence tending to show the degree of negligence of defendant Ignacio Cacho Parés, the actual damages sustained by the plaintiff and the consequences thereof, and the consent of said defendant being shown, judgment be rendered for the plaintiff, ordering the defendant Ignacio Cacho Parés to pay the sum of $200 without costs, which sum must be deposited in court until the mother of the minor shall have proved the convenience of withdrawing the same, in whole or in part, for such purposes as may be to the benefit of the said minor.

"Ciales to Arecibo, Puerto Rico, March 20, 1939. (Signed) Víctor Rivera Colón—Angel Rivera Colón, Attorneys for the plaintiff."

On March 31, 1939, after a hearing the lower court denied the aforesaid motion. The attorneys for the plaintiff then filed another amended complaint dated April 24, 1939, from which they eliminated the defendant Ignacio Cacho Parés, and on September 6 of the same year, the lower court entered an order entitled "Order Deciding Petition for the Allowance of an Amended Complaint." Said order refers to the amended complaint of April 24, 1939. In the said order of September 6, 1939, the lower court held that it would allow the filing of the amended complaint from

which Ignacio Cacho Parés had been eliminated as soon as counsel for the plaintiff showed that the latter had abandoned his action against said defendant, in which event judgment would be entered by dismissing plaintiff's action against said defendant. Accordingly, on September 15, 1939, as shown by the record, and pursuant to a motion of the plaintiff dated September 14, 1939, the court entered judgment dismissing the action as to Ignacio Cacho Parés, without prejudice to the continuance of the action against the other defendant Manuel Cacho Vega in accordance with the amended complaint of April 24, 1939.

We have confined ourselves to a statement of the professional conduct of the attorneys for the plaintiff in this case as shown by the record, and we refrain from making any comments in connection therewith in order not to prejudge the investigation of the matter which must be made by the *Fiscal* of this court. Let us consider the case on its merits.

The plaintiff-appellee, a minor eight years old represented by his mother with *patria potestas,* brought this action seeking to recover compensation for the damages sustained by him in consequence of a fracture and depression of his frontal bones. The injury was caused by the kick of a horse which, as he alleges, was owned and used by the defendant on a farm belonging to him in the ward (*barrio*) of Pasto, Morovis.

The evidence in regard to the facts giving rise to the alleged liability of the defendant is conflicting. That of the plaintiff tends to show that his mother is the owner of a 16-acre (*cuerdas*) farm located in the ward of Vega, adjacent to that of the defendant located in the ward of Paso, both wards forming part of the Municipal District of Morovis. That the defendant acquired his said farm by purchase from the Federal Land Bank, which in turn had acquired it from Honorio Claudio Archilla. That when the

defendant went to take actual possession of his farm, the latter was still occupied by its former owner, Honorio Claudio Archilla, who when relinquishing it to the defendant sold to the latter several pack horses, which he kept therein. Among the latter there was a chestnut horse which was reputed as a vicious animal and of which it was said it had formerly killed another horse. That the said horse at the time of the accident was used by the defendant in the agricultural work on his aforesaid farm. That defendant's farm and that of plaintiff's mother were separated by a fence which was in a bad state of repair, whereby defendant's horses used to pass to the farm of plaintiff's mother, of which fact she had complained to the defendant on several occasions. That on or about October 18, 1938, plaintiff's mother was washing some clothes in a brook which crosses her farm, and about noon said minor, accompanied by Francisca Calderas, went to take some coffee to his mother; that the latter remained for some time near the river bank and when the said minor and Francisca Calderas were returning home, the chestnut horse came running in an opposite direction along a vicinal road over which the former had to pass in order to return to the minor's house; that upon the horse reaching the latter it threw a kick which hit the minor without the latter having annoyed the animal in any way. That the defendant has always lived in another farm which he owns in the ward of Barahona. That the one which he owns in the ward of Pasto is managed by his son Ignacio Cacho Parés, who formerly managed another farm owned by his father in the ward of Torrecillas, Morovis. That the defendant often visited his farm in the ward of Pasto in order to inspect and direct the agricultural work.

On the other hand, the evidence of the defendant does not deny the existence of the accident. On the contrary it admits the same. But he sought to prove, first, that he did not own or use the horse in question at the time of the ac-

cident, and, second, that the damage was due to the action of the minor in entering the enclosure where the animal was peacefully grazing and in pricking it with a stick from behind.

In order to prove that he was not in possession of the farm at the time of the accident, he introduced in evidence a contract of lease of said farm which had been entered into between him and his son, since June 1937, and which was embodied in a private document, drafted by plaintiff's attorney himself. He also introduced evidence to show that defendant had no intervention in the work performed by the lessee in the farm. That occasionally he came to the farm in order to call on his son but that these visits were not frequent due to the fact that he was living far away and the roads were in bad condition and he had to travel on horseback. Besides the above-mentioned contract, he offered in evidence certain records of the Agricultural Adjustment Administration showing that on the basis of said contract of lease, Ignacio Cacho Parés, prior to the accident, had been receiving soil conservation payments in connection with the tobacco which he raised annually on his farm. He further offered evidence to show that in connection with the tobacco crops, prior to the accident, Ignacio Cacho Parés received in his own name from Morán & Co., of Manatí, the necessary agricultural advances for raising said crops. That said horse belonged to Ignacio Cacho Parés. That about a year prior to the accident the defendant kept the said horse in his farm located in Barahona, and in May 1937, exchanged it for a heifer belonging to Pedro Collazo; that Collazo kept the horse for a period of two months and then sold it for $18 to Jubiliano Torres; and that the latter kept it for five months and then sold it to Ignacio Cacho Parés.

While Ignacio Cacho Parés was testifying for the defendant in regard to the contract of lease, the attorney for the plaintiff asked him whether or not it was true

that in May 1939, he had sworn a complaint before the Justice of the Peace of Morovis against José Padilla Colón and Joaquín Pérez, charging them with the theft of certain yams from the farm in question, in which complaint the witness had stated that the stolen goods belonged to his father Manuel Cacho whose property was managed by the defendant. The witness admitted having sworn the complaint; but he sought to explain the incident by saying that said complaint had been drawn by his brother-in-law; that he had signed it without reading it; and that afterward when the trial was held in the Municipal Court of Ciales and he heard the clerk read the complaint, he became aware of the mistake and then called to the attention of the judge the fact that he, Ignacio Cacho, and not his father was the true owner of the stolen goods; that he was not the manager but only a lessee of the farm. Said withess further said that Mr. Angel Rivera Colón, now attorney for the plaintiff, heard the statements which he had made before the Municipal Judge of Ciales; that said attorney was present at the time, he being the attorney for the defendants in the criminal case.

The attorney for the plaintiff failed to make any statement to the contrary. Thereupon the attorney for the defendant asked the trial judge to summon the municipal judge and the clerk of the Municipal Court of Ciales in order that they appear as witnesses to corroborate the testimony of Ignacio Cacho in regard to said incident, and the court refused to do so, stating that it was ready to admit in evidence a certificate of said municipal court in regard to that matter. Said certificate was never offered.

After the close of defendant's evidence, Attorney Angel Rivera Colón, counsel for the plaintiff, offered his own testimony to prove that the alleged contract of lease between the defendant and his son was a simulated agreement. The attorney for the defendant objected on the ground that the

statements made to the witness by the contracting parties when the document was drawn constituted privileged communications as to which the attorney could not testify without the consent of the defendant. The court sustained the objection and the plaintiff excepted.

Did the trial court err in weighing the evidence as claimed by the defendant-appellant? If we examine the opinion on which the judgment is grounded, we shall agree with appellant. In his opinion the trial judge says:

"It was clearly established by the evidence that the defendant bought the horse which caused the damage from Honorio Claudio, and in addition to plaintiff's evidence some of the witnesses for the defendant admitted that they had seen the horse in the farm of the defendant ever since the latter had purchased it. *Such evidence overcame that of the defendant whereby he sought to prove that he did not own the animal at the time of the accident.*" (Italics ours.)

This conclusion of the trial court is erroneous. The evidence of the plaintiff regarding the ownership of the horse consisted in the testimony of Honorio Claudio Archilla to which we have already referred, and in the fact of the animal being seen and used in the work connected with the farm in the ward of Pasto which belonged to the defendant. The fact that Honorio Claudio Archilla had sold the horse to the defendant is not denied by the latter; but in order to prove that neither on the date of the accident nor at any time thereafter had he owned the horse, the defendant introduced the testimony of two persons who owned the animal after it had belonged to the defendant. The first of those persons acquired it through an exchange made with the defendant and sold it to the other person, who in his turn sold it to Ignacio Cacho Parés. None of the defendant's witnesses testified as to having seen the horse in the farm in the ward of Pasto for a period of four years *since the defendant purchased it.* What some of them stated was that they had seen the horse in the farm in question for a

period of four years while said farm belonged to Honorio Claudio Archilla. One of said witnesses Ramón Jiménez, testified that the defendant purchased it from Honorio Claudio Archilla and brought it to this farm in Barahona (Rec., p. 205). Doubtless in order to destroy plaintiff's evidence tending to show that the horse was used by the defendant on his farm in the ward of Pasto, the defendant introduced evidence tending to prove the aforesaid lease. The mistake in weighing the testimony of Ramón Jiménez evidently unduly prejudiced the defendant, and consequently the judgment must be reversed on that ground.

But the plaintiff offered the testimony of his attorney to prove that the contract of lease was simulated, and that Ignacio Cacho Parés was therefore a mere manager of the farm. Had the lower court believed the evidence regarding the simulation, and had it likewise believed the one introduced by the plaintiff to the effect that the horse was used in the work on the farm, it would then have had a basis for inferring that the defendant, if not the owner of the animal, was at least using it for his own benefit, and in that event he would have been liable for the damages caused, in accordance with §1805 of the Civil Code, which provides:

"Section 1805.—The possessor of an animal, or the one who uses the same, is liable for the damages it may cause, even when said animal should escape from him or stray.

"This liability shall cease only in case the damage should arise from *force majeure* or from the fault of the person who may have suffered it."

The admissibility of that evidence depends upon whether no advice regarding the legal effect of the contract had been sought from Attorney Angel Rivera Colón by the contracting parties. If they merely asked him to draft the contract, without requesting any legal advice from him as to the rights and obligations which might arise from the transaction, in other words, if his intervention was confined to serving as

a mere instrument in order to put in writing what they said they had agreed upon, in that event, Mr. Rivera Colón, in contemplation of law, did not act in his capacity as attorney; and if under the circumstances surrounding the conversation and in the course thereof the parties, or either of them, in the presence and within the hearing of the other, without any protest on the part of the latter, stated to him that the transaction was simulated, in that event the communication was not privileged and was therefore admissible. If on the contrary the attorney was consulted regarding the legal effect of the contract which he was about to draft, that is, regarding the rights and obligations of the parties as lessor and lessee, respectively, etc., and if in the course of that conference he was informed that the contract was simulated, then the communication, unless the simulation was made for a fraudulent purpose, was privileged and, as such, was not admissible in evidence without the consent of the defendants. 8 Wigmore on Evidence (1940 ed.), §2297, p. 571, and cases cited, and 3 Jones on Evidence (4th ed., 1938), p. 1345. Consequently, for the purposes of the admission or rejection of that evidence, the trial judge should have first investigated in which of the two circumstances above stated the alleged communication was made in order to be able to determine whether or not the evidence was admissible.

■ It seems advisable to add that the trial judge in referring to the contract of lease said:

"Although the defendant introduced a document which purpots to be a contract of lease in favor of the son, and collateral evidence as to the fact that the son dealt with third persons in regard to the property, there is an authentic document from which it appears that Ignacio Cacho stated under oath before the Municipal Court of Ciales, in a criminal case, that he managed the said property belonging to his father in the ward of Pasto, Morovis."

However, the fact should not be overlooked that such ad-

mission made by Ignacio Cacho Parés was only admissible to impeach his veracity and does not bind the defendant Manuel Cacho Vega, for in order to so bind him it would be necessary to show that the former was a partner or agent of the latter, that the agency or partnership be proved, and that the act or statement was within the scope of the partnership or agency, and during its existence. (Sec. 397, Code of Civil Procedure.)

It would be unfair to the plaintiff minor to reverse the judgment on the ground of the error committed in the weighing of the evidence, without giving him an opportunity to offer the evidence regarding the simulation, if the circumstances under which the communication was made to the attorney were such as to render it admissible in accordance with the aforesaid rule. Said evidence, if believed by the court, might tip the scales of justice in his favor.

For the above-stated reasons, and considering the extraordinary circumstances of the present case, the judgment of August 11, 1941, must be reversed and the case remanded for a new trial.